FRANKLIN MENTORE and CARLIEN MENTORE, Plaintiffs Below, Appellants,
v.
METROPOLITAN RESTAURANT MANAGEMENT COMPANY, Defendant Below, Appellee.
No. 226, 2007.
Supreme Court of Delaware.
Submitted: December 12, 2007.
Decided: January 8, 2008.
Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

ORDER
JACK B. JACOBS, Justice.
This 8th day of January 2008, upon consideration of the briefs of the parties and their contentions at oral argument, it appears to the Court that:
1. Franklin Mentore ("Mentore") and his wife, Carlien Mentore, the plaintiffs below, appeal from the denial by the Superior Court of their motion for a new trial. On appeal, the plaintiffs claim that the Superior Court erred by not admitting into evidence at trial: (i) certain statements allegedly made by employees of the defendant; and (ii) an interrogatory answer. Because in making those rulings the Superior Court committed no legal error and did not abuse its discretion, we affirm.
2. This is an action for personal injuries allegedly sustained by Mentore in a slip and fall at a Popeye's restaurant, which is managed by the defendant, Metropolitan Restaurant Management Company. The case was tried before a Superior Court jury. At trial, the only testimony heard by the jury was that of Mr. and Mrs. Mentore. The defendant did not call any witnesses.
3. Mentore testified that he took his wife and three children to a Popeye's restaurant for dinner. After they sat down at a table, Mentore walked past a condiment station and a trash can to the counter where he placed a food order. He then returned with the order to the table, retracing the same path. Moments later, noticing that something was wrong with the receipt he was given, Mentore walked back to the counter, passing the condiment station and the trash can for the third time. After waiting at the counter for several minutes, Mentore started walking towards his family's table, following the same route. This time, however, he slipped and fell on "liquid" near the condiment station and the garbage can. Mentore testified that, as a result of the fall, he lost consciousness momentarily, was helped directly to the counter by his wife and another patron, and then remained in the restaurant for 45 minutes after the accident, with no employee helping him. Mentore testified that he drove home with his family and was taken to the hospital several hours later for medical attention, because he was experiencing nausea and headaches.
4. Mrs. Mentore testified that when her husband fell, the whole family laughed because everyone thought it was funny. After she realized that Mentore was not getting up, she and two other customers helped Mentore to his feet and directly back to the table. Mrs. Mentore did not mention that her husband had passed out. Moreover, she testified that they left the restaurant a fewnot 45 minutes later.
5. The jury found that Popeye's conduct was not negligent and rendered a verdict for the defendant. Plaintiffs moved for a new trial, claiming that the verdict was against the great weight of the evidence and that the trial court had erred in refusing to admit certain evidence. The Superior Court denied the plaintiffs' motion.[1] This appeal followed.
6. The plaintiffs first claim that the Superior Court erred by not allowing them to testify about statements of several employees who witnessed the incident. More specifically, both plaintiffs wanted to testify about statements made to them at the restaurant by a janitor, Frankie Rodriguez ("Rodriguez"), and several cashiers. Rodriguez was subpoenaed but never appeared. The record does not disclose what efforts, if any, were made to locate the cashiers. When plaintiffs' counsel attempted, at trial, to elicit testimony from the Mentores regarding what those employees had said when Mentore slipped and fell, the defense objected. A sidebar conference ensued and, after both parties presented their arguments, the trial judge sustained the objection. The judge ruled that: "[Mentore] can talk about what [the employees] did; and his wife is there, she can talk about what they did. But there won't be any statements admitted."
7. The Superior Court excluded testimony about the employees' statements on the ground that the statements would constitute impermissible hearsay. We review a trial court's decision to exclude matters from evidence for abuse of discretion.[2] A trial court exercises its discretion as to admissibility only after it has first determined whether a statement is hearsay. That predicate determination involves a legal issue and, thus, is subject to de novo review.[3]
8. At the sidebar conference, plaintiffs' counsel argued that, under D.R.E. 801(d)(2)(D), the Mentores should be allowed to testify about statements made by the restaurant's employees. D.R.E. 801(d)(2)(D) relevantly provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."[4] Thus, statements may be admitted under the "admission by a party opponent" exception to the hearsay rule, if the plaintiff shows that the statements (a) were made by a party's agent or servant, and (b) were about a matter within the scope of the declarant's agency or employment.[5]
9. Here, there is evidence of record to support a finding that the janitor and the cashiers were employees of the restaurant. Mrs. Mentore testified that the janitor was wearing a uniform and was wiping tables on the left side of the restaurant, four to five feet away from the Mentores' table. The cashiers, Mr. Mentore testified, were sitting behind the counter, which supports an inference that the cashiers were also the restaurant's employees.
10. Statements by low-level employees may constitute admissions by a party opponent, but only if the subject of the statement concerns a matter within the scope of their employment.[6] On this record, it is difficult to assess whether the statements concerned matters within the scope of the janitor's and the cashiers' employment. On appeal, the Mentores claimfor the first timethat the employees' reaction and statements would have demonstrated that, before the incident, the restaurant had actual or constructive notice of a dangerous situation (the spill), yet failed to remove it.[7]
11. Under Supreme Court Rule 8, "[o]nly questions fairly presented to the trial court may be presented for review" on appeal, except where "the interests of justice so require." Here, the question was not fairly presented to the trial court and, as a consequence, there is no adequate record for this Court to review because at the two sidebar conferences during the trial plaintiffs' counsel did not disclose to the trial judge, by way of proffer, what the content of those statements would be. The question therefore becomes whether the "interests of justice" require us to review the plaintiffs' claim that the excluded testimony would have demonstrated the defendant's prior knowledge of the dangerous situation.
12. We find that no such review is required. The record indicates that, despite the trial court's ruling of inadmissibility, both plaintiffs actually did testify about the employees' reaction and certain statements made by them. Specifically, they testified that the janitor came to their table and apologized, and then cleaned the spill, and that the cashiers were yelling:
[Counsel:] And [the janitor] was the one that mopped up the spill?
[Mr. Mentore:] Afterwards, yes, sir, afterwards.
[Counsel:] And you mentioned that he said he was sorry. Did he tell you why?
[Mr. Mentore:] Yes. After my wife and the elderly woman helped me back to my seat and I was sitting there, everyone in the restaurant was just watching.... (First sidebar conference was held).
[Counsel:] After you saw this individual that you've identified as Frank clean up the floor, did you talk to anyone else at Popeye's?
[Mr. Mentore:] I had gotten the name of the woman that had helped me up, also, because  when I slipped and fell.
[Counsel:] And did you hear ... other employees talk about the fall?
[Mr. Mentore:] Yeah, they were all yelling.... (Second sidebar conference was held).
* * *
[Counsel:] And, then, after the accident ... did [the janitor] come over... when your husband fell, did Frank come over?
[Mrs. Mentore:] No. He came over after I got help and my husband and I came over and satI sat him down. He came over and he apologized.
[Counsel:] And did he clean up the spill?
[Mrs. Mentore:] He went afterwards and cleaned up the spill.
[Counsel:] How did he do that?
[Mrs. Mentore:] After he spoke with us. With the bucket and the mop, the yellow bucket and the mop the stores use.
[Counsel:] Where was the bucket and the mop?
[Mrs. Mentore:] The bucket and the mop was [sic] on the left side where he was wiping on the table. As he entered into the door, it was right in the corner there on the ground. And the yellow sign that says "Wet" or "Caution" was on the side, too.
13. Plaintiffs' counsel made no proffer of anything else the janitor and the cashiers may have said, nor did he show that any such additional statements would satisfy the requirement of falling within the scope of the janitor's and the cashiers' employment. Therefore, the Superior Court did not abuse its discretion in limiting the plaintiffs' testimony about the employees' statements.
14. The plaintiffs' second claim is that the Superior Court erred by not admitting into evidence an interrogatory answer. We review that determination for abuse of discretion.[8]
15. At the trial, the plaintiffs offered into evidence defendant's Answer to Interrogatory #57, which asked:
Please state whether you or any employee received any complaint, warning or notice of any form written or verbal, of the dangerous, defective condition of the premises in general and area wherein the Plaintiff was injured in particular prior to the accident in which the Plaintiff was injured.
Answer: A customer indicated there was a spill in the dining room. Defendant argued that if the Answer to Interrogatory #57 was admitted, then so should the Answer to Interrogatory #58. Interrogatory #58 asked:
If so, for each complaint, warning or notice, either written or verbal, state:
(a) The date and time it was received;
(b) Whether it was written, oral and if oral, the substance of it;
(c) The name or other means of identification and address of the person by whom it was given;
(d) The name, address and job title of the person who received it;
(e) The nature and location of the danger or defect to which it related;
(f) Whether any action was taken as a result of it and if so, a description of the action and the time at which it was taken.
Answer: Immediately prior to the incident, a customer indicated there was a spill in the dining room. The floor was mopped and dried and yellow caution signs were placed in the area.
16. Because the plaintiffs' counsel did not agree to the simultaneous admission of Answers #57 and #58, the trial judge declined to admit either Answer into evidence. We find that the trial court's ruling was a correct application of the rule of completeness, as codified in D.R.E. 106: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."[9] The purpose of that rule is to "prevent misleading impressions which often result from taking matters out of context."[10] Here, Answer #57 stated that before Mentore fell, a customer had told Popeye's employees that there was a spill in the dining room. That answer, standing alone, could create a misleading impression that the defendant had admitted that there was a spill, and took no action to rectify it. Answer #58 completes Answer #57 with the information that the spill was mopped and dried and caution signs were placed on the floor, i.e. that steps were taken to rectify the condition. Under the rule of completeness, if Answer #57 were admitted, Answer #58 would also have to be admitted to avoid an incomplete or misleading admission taken out of context. We therefore conclude that the Superior Court did not abuse its discretion and properly declined to admit Answer #57 (standing alone) under D.R.E. 106.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Mentore v. Metro. Rest. Mgmnt. Co., 2007 WL 1098643 (Del. Super.).
[2] Browne v. State, 2003 WL 21364452, at *2 (Del. Supr.) (citing Reyes v. State, 819 A.2d 305, 311-12 (Del. 2003)).
[3] See, e.g., Wilmington Country Club v. Cowee, 747 A.2d 1087, 1091-92 (Del. 2000).
[4] D.R.E. 801(d)(2)(D). Mentore alternatively claims that the statements are admissible under D.R.E. 803 and 804. Because the employees' statements clearly do not fall under the "present sense impression" hearsay exception and were not "contrary to the declarant's pecuniary or proprietary interest," D.R.E. 803 and 804 are not applicable here.
[5] The basis for disallowing testimony by the Mentores about the employees' statements is unclear. The Superior Court elliptically noted: "The record did not support the conclusion that the alleged statement was made by an agent or servant concerning a matter within the scope of his agency or employment. This objection is apparently moot as ... the testimony was presented through Mrs. Mentore." Mentore v. Metropolitan 2007 WL 1098643, at *3.
[6] See Denson v. Acme Markets, 1996 WL 769216, at *1 (Del. Super.) (holding that certain statements by an Acme employee may be admissible as an admission by a party opponent). Compare Shinners v. K-Mart Corp., 847 F. Supp. 31, 34 (D. Del. 1994) (holding that a statement by an unidentified shopperthat his wife fell in the same placewas inadmissible hearsay). See also, e.g., Halleck v. Coastal Bldg. Maint. Co., 647 N.E.2d 618, 623-24 (Ill. Ct. App. 1995) (holding that janitor's statement of apology was party admission of negligence).
[7] In a premises liability action, such as this, the plaintiff must show: (1) that the invitee's injuries were caused by an unreasonably dangerous condition on the premises; (2) which the owner knew or should have discovered by the exercise of reasonable care; (3) which the owner was more likely than the invitee to know about or discover in the exercise of reasonable care; and (4) that the owner failed to use reasonable care to protect the invitee against the danger. See Austin ex rel Austin v. Happy Harry's Inc., 2006 WL 3844076, at *2 (Del. Super.) (citing Callaway v. Scrivner, 1991 WL 113437, at *3 (Del. Super.)).
[8] Ayers v. State, 844 A.2d 304, 310 (Del. 2004).
[9] D.R.E. 106.
[10] Ayers, 844 A.2d at 311.